**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **ESTEVAN CERVANTEZ** | § | |
| | § | |
| **VS.** | § | **NO. A-18-CV-1059-RP** |
| | § | |
| **BRYAN COLLIER, ET AL.** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE ROBERT PITMAN
        UNITED STATES DISTRICT JUDGE

Before the Court are Defendants' Motion for Judgment on the Pleadings for Lack of Subject Matter Jurisdiction and Failure to State a Claim (Dkt. No. 53); the Response (Dkt. No. 54); and Reply (Dkt. No. 57). The District Court referred the motion to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Court Rules.

## I.  BACKGROUND

Plaintiff Estevan Cervantez is a former Corrections Officer at the Texas Department of Criminal Justice, who alleges he was wrongfully forced to resign. He does not sue the Texas Department of Criminal Justice, but rather sues nine TDCJ employees in both their official and individual capacities pursuant to 42 U.S.C. § 1983, alleging violations of his procedural and substantive due process rights under the Fourteenth Amendment. Dkt. No. 1 at 16, 27, 23. He also asserts state law claims of tortious interference with employment contract, duress, conspiracy and fraud. Cervantez requests declaratory, injunctive, and monetary relief.  Cervantez's Complaint (Dkt. No. 1) asserts the following facts:

- Cervantez was hired by TDCJ in March of 2017, when he was 19 years old. *Id.* at 4. After completing the correctional academy, he was subsequently assigned to the O. L. Luther Unit in Navasota, Texas. *Id.*

- On January 24, 2018, along with four other officers, Cervantez, was directed by Lieutenant Miller and Sergeant Anthony Myles to the prison unit parking lot because their vehicles had been selected by the TDCJ Office of Inspector General for a random search. No evidence of contraband or prohibited materials was discovered in Cervantez's vehicle. *Id.* at 5. Afterwards, Lt. Miller instructed Cervantez to return back to work. *Id.*

- Cervantez was directed to Assistant Warden Fernando Fuster's office. Present in the office was Senior Warden Donald Muniz, Major Alonzo Hammonds, Sergeant Myles, and OIG Officer Steven Roskey. Cervantez was then approached by Senior Warden Muniz. Warden Muniz stated to Cervantez to "look him in his eyes" and "he wanted my full cooperation and nothing but the truth." Cervantez agreed. Warden Muniz then left the office. *Id.* at 6.

- Cervantez was then interviewed by OIG Officer Roskey. Roskey asked whether Cervantez had "ever brought anything in to an inmate." *Id.* Cervantez responded "no." Officer Roskey then asked Cervantez if an inmate had ever asked him to bring anything into the facility. *Id.* Cervantez responded and indicated that he had been previously approached. Specifically, in the first two months of his employment, Cervantez stated that two offenders, Crookshank and Dunlap had asked him if he had ever considered bringing something into the facility. *Id.* Cervantez immediately ordered these two offenders to stop asking him these questions and explained if they did it again they would be issued a disciplinary infraction. Both of the offenders complied and Cervantez was not approached again. *Id.* Cervantez explained that the questions asked by Crookshank and Dunlap were non-specific, probing questions that were asked in passing and did not involve any significant details. *Id.* Cervantez explained that he did not believe that either question contained a credible proposition that would satisfy the element of a solicitation charge because Cervantez was not asked to bring in an item nor offered compensation either monetary or otherwise, and he considered the matter informally resolved per policy. *Id.* at 7. Roskey then remarked, "That's a bullshit 19 year old answer; so you're telling me you handled it the street way." *Id.* Roskey further informed Cervantez that, per policy, merely being asked that question constituted an offender's attempt to establish a relationship. *Id.*

- Roskey then asked Cervantez if a prisoner named Shaw had ever had a personal conversation with him. *Id.* Cervantez responded that on one occasion Shaw asked him about his age and Cervantez immediately instructed Shaw that he was only to speak to him about TDCJ related matters and that his personal information was not the offender's concern. *Id.* Cervantez explained that he did not believe that Shaw

2

attempted to establish a relationship with him because his questions did not meet the elements of the charge for solicitation. Roskey disagreed. *Id.* He again informed Cervantez that, per policy, being asked any personal question by an offender constituted the offender's attempt to establish a relationship. Roskey then stated that Shaw had given him a written statement regarding Cervantez stating he knew he was from Port Arthur, Texas. Roskey accused Cervantez of being his "homeboy." *Id.*

• During the interrogation process, Roskey placed his hand on a binder, which was lying on the desk. *Id.* at 8. Roskey stated that he "had a folder of evidence" confirming that Cervantez had, in fact, an established relationship with Shaw, and that Cervantez "better not lie." *Id.* Cervantez reiterated that the only relationship he had with Shaw was professional. Roskey then directed the questioning toward another staff member, Officer Campise, stating "I'm sure you already know what happened to your friend Campise." *Id.* Cervantez denied this and stated he was not close with Campise despite graduating from the same academy class. *Id.* Roskey then advised Major Hammonds and Sergeant Myles that he had found no evidence of criminal activity, that any more concerns would be administrative matters, and "I am out of it." *Id.*

• Major Hammonds then continued the interview, asking Cervantez if Campise had told him about "when he made the drop" which Cervantez denied knowledge of. *Id.* at 8-9. Major Hammonds stated, "I don't trust you, so either way you're going to resign or you're going to face disciplinary and be separated from the agency, I don't want you working here." *Id.* at 9. Cervantez told Hammonds that he would prefer to go through the disciplinary process. Roskey then interjected and told Cervantez that he would be charged with "three level two's. At this point, you're smoked. You're done! You're not going to make it past three level two disciplinaries." *Id.* Major Hammond agreed. As well, he told Cervantez that if he resigned, he would not receive a disciplinary offense. *Id.* Cervantez then asked Sergeant Myles if resigning would effect his ability to get other government law enforcement jobs. Sergeant Myles stated that it would not adversely effect him. *Id.*

• Cervantez asserts that he felt compelled to resign. *Id.* Cervantez penned a resignation letter which he alleges Hammond dictated to him. In the letter, Cervantez states that the three different inmates approached him in an effort to establish a relationship and he did not report it to a supervisor. *Id.* Cervantez alleges that Hammond told him to immediately surrender his resignation directly to Hammond. *Id.* at 10. Hammond then escorted Cervantez to the Human Resources Department, where Cervantez surrendered his identification card. *Id.* In speaking with HR staff, Cervantez was advised that he would remain an active employee pending the exhaustion of all allowable accrued time balances, thereby remaining officially employed with the TDCJ until February 15, 2018. *Id.*

3

- On January 31, 2018, Cervantez returned to the Luther Unit One Picket to relinquish his uniforms. *Id.* After being escorted to the Human Resources Department, Cervantez submitted a grievance regarding his resignation/termination to the HR Supervisor, Carter, along with his uniforms. *Id.* at 11. Carter asked why Cervantez was filing a grievance as Cervantez had voluntarily resigned. Cervantez explained that he wanted to file a grievance because he had not resigned voluntarily. *Id.*

- Carter directed Cervantez to stop by the Assistant Warden Fuster's office on his way out of the facility. *Id.* Cervantez did so. At this meeting, Assistant Warden Fuster stated that "I know you resigned, but I have a disciplinary for you," and proceeded to read the disciplinary aloud. *Id.* The Employee Offense and Prehearing Investigation Report (PERS 325), authored by Hammond, charged that on January 24, 2018, Cervantez admitted to him that Offender James Shaw had solicited Cervantez to introduce synthetic marijuana (K2), into the facility, and that although the offer was declined, Cervantez failed to notify an appropriate security staff member about the incident. Additionally, Hammond claimed that Cervantez had admitted to being propositioned to introduce contraband into the facility by two other offenders, Crookshank and Dunlap, and Cervantez also failed to report these incidents. After reading the Employee Offense Report, Assistant Warden Fuster asked Cervantez to provide a statement to the charges for a subsequent employee disciplinary hearing, and that Cervantez sign and date an acknowledgement of having received notification of the charges. Before signing, Cervantez asked if he could have a copy of the form. Assistant Warden Fuster agreed. Cervantez then indicated "N/A" as his statement, signed, and dated the document. *Id.* at 12.

- Beginning on January 31, 2018, Cervantez filed nine separate grievances. The first grievance involved his resignation, the second grievance involved the PERS he received from Hammond after the resignation, and the remaining seven grievances were filed against the individual persons involved in the January 24, 2018, investigation and the subsequent events — Sgt. Myles, Major Hammond, OIG Officer Roskey, Warden Fuster, and Senior Warden Muniz, as well as Luther Unit Human Resources Department Manager Carter's refusal to accept all previously grievances filed. *Id.* at 13.[1]

- These grievances were assigned to TDCJ Human Resources Specialist Kristie Largent. *Id.* She rejected the grievances either because he had filed on multiple respondents or because he and had "resigned his position with the agency therefore this issue is non-grievable" or on the basis that "pending disciplines are non-grievable." *Id.* Largent did not respond to Cervantez's complaints against

---

[1]Cervantez claims in his Complaint that he filed seven grievances against individuals, but only lists six individuals. Dkt. No. 1 at 13.

Assistant Warden Fuster, Carter, or the second disciplinary appeal. *Id.* at 14. Cervantez asserts that the failure to address his grievances violated TDCJ policy.

• Sometime thereafter, Cervantez discovered that Senior Warden Donald Muniz and Director Melodye Nelson terminated him with a "RS57B" designation code, which means that Cervantez "separated during an investigation" namely, a "unit or department investigation" regarding an "alleged rule violation number(s): #43." (PERS 327) *Id.* at 14.

• On May 1, 2018, Cervantez's counsel, Mr. Poerschke, sent a letter to Sharon Felfe Howell, General Counsel for TDCJ, in which he requested that "Mr. Cervantez be reinstated and his record cleared of any wrongdoing." On May 8, 2018, Ms. Carla M. Willis, Deputy General Counsel, responded indicating that "documentation shows that Mr. Cervantez filled out the voluntary resignation form in its entirety." *Id.* at 15.

• On May 22, 2018, Cervantez applied for re-employment as a correctional officer with TDCJ. On July 5, 2018, Amanda Flinn, Section Director, Employment, denied the request. Ms. Flinn indicated in denying the request that she considered Cervantez's "disciplinary history with this Agency" (referring to TDCJ). *Id.*

• On September 12, 2018, Cervantez's counsel, Mr. Poerschke, requested from Ms. Patty Garcia, the Human Resources Division Director, a name-clearing hearing or some sort of other similar process to correct the improper alleged designation of Cervantez's separation as a "RS57B." Cervantez invoked Section 559.004 of the Texas Government Code. He did not receive a response. *Id.* at 15-16.

Cervantez asserts that the actions described above constitute violations of his Fourteenth Amendment rights to procedural and substantive due process. He asserts both a loss of his property interest in his position with TDCJ, and an infringement on his liberty interest in his reputation. He also asserts various state law claims. Defendants move to dismiss asserting the Court lacks subject matter jurisdiction and that Cervantez has failed to state a claim for relief.

## II. STANDARDS OF REVIEW

### A. Rule 12(b)(1) Standard of Review

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may challenge the subject matter jurisdiction of the district court. FED. R. CIV. P. 12(b)(1); *Rodriguez v. Texas Comm'n*

*on the Arts*, 992 F. Supp. 876, 878 (N.D. Tex. 1998), *aff'd*, 199 F.3d 279 (5th Cir. 2000). Where a defendant attacks jurisdiction based solely on the allegations of the complaint, as here, the plaintiff's factual allegations are presumed to be true. *O'Rourke v. United States*, 298 F. Supp. 2d 531, 534 (E.D. Tex. 2004); *Rodriguez*, 992 F. Supp. at 878. Dismissal for lack of subject matter jurisdiction is appropriate when the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Warnock v. Pecos County, Tex.*, 88 F.3d 341, 343 (5th Cir. 1996); *O'Rourke*, 298 F. Supp. 2d at 534. When a Rule 12(b)(1) motion challenges the complaint on its face, without reference to extraneous facts, courts analyze the pleadings under the same standard as a motion to dismiss under Rule 12(b)(6). *Home Builders Ass'n of Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998); *Doe v. Myspace*, 528 F.3d 413, 418 (5th Cir. 2008). When a Rule 12(b)(1) motion is filed with a Rule 12(b)(6) motion, the court should consider the jurisdictional attack before addressing the 12(b)(6) motion. *Rodriguez*, 992 F. Supp. at 879.

**B.      Rule 12(b)(6) Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the

[movant] is liable for the misconduct alleged." *Id.* The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### III. ANALYSIS

Cervantez brings claims pursuant to 42 U.S.C. Section 1983 and state law.  It is important to note at the outset that a state governmental employee suing under § 1983 has an uphill battle before him, for a host of reasons: with limited exceptions, the Eleventh Amendment prevents an individual from suing a state in federal court; states possess sovereign immunity from claims brought under state law; state officials sued individually are bestowed with qualified immunity, which, due to the Supreme Court's decisions in the past 20 years, has become an almost impenetrable shield; and employees in Texas have limited rights when their employment is at-will and demonstrating the employment was otherwise is difficult.  Thus, even when a state employee is treated poorly, or unfairly, this does not mean the employee will have a claim redressable in federal (or state) court. This is just such a case.

### A.    Eleventh Amendment Immunity

First, Defendants assert they are entitled to Eleventh Amendment immunity for claims brought against them in their official capacity. The Eleventh Amendment bars an action in federal court by a citizen of a state against a state or its department or agencies. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984). An official capacity suit against a government official or employee is the equivalent of suing the governmental entity itself. *Thomas v. Tex. Dep't of Family and Protective Servs.*, 427 F. App'x 309, 312 (5th Cir. 2011) ("suits against employees of

state entities in their official capacity run afoul of the Eleventh Amendment."). Most importantly, the Eleventh Amendment similarly bars suits seeking damages against employees of state entities in their official capacity. *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974); *see also Stem v. Ahearn*, 908 F.2d 1, 3 (5th Cir. 1990) ("The amendment is not evaded by suing state employees in their official capacity. . ."). Cervantez responds that before analyzing an official immunity defense the Court must determine whether TDCJ is an "arm of the state." Dkt. No. 54 at 2. The Court need not do so, however, because that issue has already been decided by the Fifth Circuit. As long ago as 2002, the Fifth Circuit noted that "[w]e twice have held that the Eleventh Amendment bars recovering § 1983 money damages from TDCJ officers in their official capacity." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). TDCJ is an arm of the state of Texas. All official capacity claims seeking monetary damages stated in the complaint must therefore be dismissed.

As to Cervantez's Section 1983 claims not involving monetary damages, "the Eleventh Amendment also 'generally precludes actions against state officers in their official capacities." *Salinas v. Tex. Workforce Comm'n*, 573 F. App'x 370, 372 (5th Cir. 2014) (quoting *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004)). This is because "a suit against a state official in his or her official capacity . . . is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). This rule, however, does not prevent a suit against a state officer in her official capacity for prospective injunctive relief. *Id.* n.10 (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Ex Parte Young*, 209 U.S. 123 (1908)). Defendants effectively concede that Cervantez's claim for reinstatement of employment is a form of prospective equitable relief that fits within the *Ex Parte Young* exception. Dkt. 53 at 15; *see Anderson v. Valdez*, 913 F.3d 472, 479 (5th Cir. 2019).

8

Finally, Cervantez's state law claims, whether they seek monetary or prospective injunctive relief, are completely barred by the Eleventh Amendment, since the *Ex Parte Young* exception only applies to claims brought under federal law. *See e.g. Hughes v. Savell*, 902 F.2d 376, 378 (5th Cir. 1990) (where a plaintiff "accuse[s] state officers of violating state common law when acting in the course and scope of their employment, the Eleventh Amendment prevents the litigant from raising the claim in federal court whether the litigant seeks damages or injunctive relief"); *Rosario v. Texas Veterans Comm'n*, 2019 WL 5595234, at *4 (W.D. Tex. Oct. 29, 2019). Thus, all of Cervantez's state law claims, as well as his official capacity claims requesting monetary relief, are barred by the Eleventh Amendment. What remains is Cervantez's official capacity due process claim seeking reinstatement and other equitable relief, as well as his due process claim against the individual defendants seeking monetary relief.

**B.      Section 1983 Claims**

As noted, Cervantez alleges the Defendants violated his property and liberty rights under the due process clause of the Fourteenth Amendment when they coerced him to resign. He brings this claim pursuant to § 1983. In order to state a claim under § 1983, a plaintiff must: (1) allege a violation of rights guaranteed by the United States Constitution or federal law; and (2) demonstrate the alleged deprivation was committed by a person acting under color of state law. *Doe v. Dall. Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998).

**1.      Procedural Due Process Claims**

Cervantez alleges Fourteenth Amendment due process claims based upon his alleged forced resignation and the aftermath during which he asserts he was denied the opportunity to file a meaningful grievance or appeal, or to challenge the negative statements TDCJ placed in his

employment record regarding the alleged reason for his separation.   Cervantez requests monetary damages—including back pay and benefits—along with equitable relief in the form of a name-clearing hearing, the removal of the RS57B designation from his record, and reinstatement to his position.   Specifically, Cervantez asserts he was deprived of due process when: (1) he was denied the opportunity to grieve his forced resignation; and (2) he was denied a hearing after he received a disciplinary action causing his separation from employment to be given an "RS57B" designation code. Dkt. No. 1 at 20.

The Fourteenth Amendment prohibits a state from depriving a person "of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1. Procedural due process requires notice and an opportunity to be heard. *Matthias v. Bingley*, 906 F.2d 1047, 1051-52, *modified on other grounds*, 915 F.3d 946 (5th Cir. 1990).   To survive a Rule 12(b)(6) motion, a procedural due process claim must plausibly establish that (1) the State interfered with an existing protected liberty or property interest; and (2) the procedures leading up to the deprivation of that interest were constitutionally deficient. *O'Donnell v. Harris Cty.*, 892 F.3d 147, 157 (5th Cir. 2018). Here, Cervantez asserts that TDCJ interfered with both his property and liberty interests.

### a.   Property Interest

An employee has a property interest in his employment for purposes of the Fourteenth Amendment only when he has a legitimate right to continued employment. *McDonald v. City of Corinth*, 102 F.3d 152, 155 (5th Cir. 1996) (citing *Perry v. Sindermann*, 408 U.S. 593, 601-602 (1972)). Generally, no such right exists unless "the public entity has acted to confer, or alternatively, has created conditions which [imply], the existence of a property interest by abrogating its right to terminate an employee without cause." *Muncy v. City of Dallas*, 335 F.3d 394, 398 (5th Cir. 2003).

Under Texas law, employment is presumed to be "at will," or terminable at any time by either party with or without cause. *Fed. Express Corp. v. Dutschmann*, 846 S.W.2d 282, 283 (Tex. 1993). To overcome this presumption, a plaintiff must demonstrate that his employment status has been altered by statute, contract, or express policies which limit the conditions by which an employee may be terminated. *Muncy*, 335 F.3d at 398. Texas law provides that unilaterally issued employment manuals, handbooks, or policies do not, without more, constitute written contracts. *See Heggemeier v. Caldwell Cty.*, 826 F.3d 861, 871 (5th Cir. 2016); *Zimmerman v. H.E. Butt Grocery Co.*, 932 F.2d 469, 471 (5th Cir. 1991).

To overcome this problem, Cervantez pleads that TDCJ policies regarding disciplinary and grievance proceedings created an implied employment contract with TDCJ, because TDCJ's polices operated to modify the "at-will" relationship. He pleads the policies "specifically and expressly curtailed TDCJ's right to terminate him." Dkt. No. 1 at 16. Defendants respond that Cervantez's employment was at-will, and he acknowledged this when he applied for his position. Defendants point out that when Cervantez applied to TDCJ for employment as a Corrections Officer, TDCJ provided him with the Correction Officer position's Conditions of Employment as part of the application packet. Dkt. No. 53-1 at 3-4. The TDCJ Conditions of Employment state under a subheading titled "Employment Rights" that "[e]mployees of TDCJ are 'at will' employees. This means that employment is for no definite period and may, regardless of the date or payment of wages and salary, be terminated at any time without prior notice." Dkt. No. 53-1 at 3.

The question here is whether Cervantez has alleged enough facts to make a plausible argument that TDCJ's policies and procedures sufficiently constrained its ability to terminate an employee that they altered the stated "at-will" term of his employment. An employee handbook can

only modify an employee's at-will status if the manual clearly and specifically outlines the circumstances in which an employee can be terminated and the employer has unequivocally demonstrated an intent to be bound by those procedures.  Thus, in *Aiello v. United Air Lines, Inc.*, 818 F.2d 1196, 1201 (5th Cir. 1987), the court found that a handbook altered the at-will employment status where it contained "detailed procedures for discipline and discharge, . . . the company followed them and notified appellee that she was entitled to them" and "treated them as a contract obligation").   On the other hand, in *Byars v. City of Austin*, 910 S.W.2d 520, 523-24 (Tex. App.—Austin 1995, writ denied), the court held that an employee handbook's description of usual disciplinary procedures was not sufficiently "clear and specific" so as to modify the employment at will status. And in *Zimmerman v. H.E.B.* the circuit held that although the handbook there "contained fairly detailed procedures for discipline and discharge," it "did not provide that employees would only be discharged for good cause," and thus did not alter the employee's at-will status. Zimmerman, 932 F.2d at 471.  *See also Matagorda Cty. Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 739 (Tex. 2006) (limitations on at-will employment "cannot simply be inferred" based on a handbook alone).

In this case, while the TDCJ rules regarding disciplinary actions Cervantez cites in his complaint include mechanisms for challenging disciplinary actions, it explicitly states:

> These guidelines **do not** constitute an employment contract or a guarantee of continued employment. The TDCJ reserves the right to change the provisions of these guidelines at any time. Nothing in these guidelines and procedures limits the executive director's authority to establish or revise human resources policy. These guidelines and procedures are adopted to guide the internal operations of the TDCJ and do not create any legally enforceable interest or limit the executive director's, deputy executive director's, or division directors' authority to terminate an employee at will.

Dkt. No. 57-3 at 3 (PD-22) (emphasis original). The rules permitting an employee to seek mediation of a disciplinary termination contain nearly identical language. *Id.* at 7 (PD-35). In light of the case law, Cervantez's reliance on the TDCJ's policies is unwarranted, as it does not clearly and specifically indicate that TDCJ intented to alter the at-will status of its employees by adopting the grievance and disciplinary procedures. Accordingly, the facts pled in Cervantez's complaint are not sufficient, as a matter of law, to overcome the presumption that his employment with TDCJ was at-will, and thus fail to state a claim to a property interest in employment sufficient to state a Fourteenth Amendment due process claim.

Moreover, there is no property interest in state governmental employment unless state law creates such a property interest. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972). Cervantez points to no statutes governing TDCJ employees' entitlement to continued employment. Nor does Cervantez allege that any formal, written employment contract with TDCJ exists establishing his rights as a tenured employee. Cervantez has not otherwise overcome the presumption of at-will employment with TDCJ to demonstrate a property interest for a due process claim. *See Rosario v. Texas Veterans Comm'n*, 2019 WL 5595234, at *6 (W.D. Tex. Oct. 29, 2019).

### b.    Liberty Interest

Cervantez also alleges he had a liberty interest in his reputation that entitled him to due process. Dkt. No. 1 at 27, 29, and 31. A liberty interest may arise when a government employee is terminated "amidst allegations of misconduct," triggering the employee's procedural due process rights to notice and an opportunity to be heard. *See Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006). Not all misconduct terminations of government employees trigger these procedural rights, however. Rather, liberty interests are infringed "only when the employee is discharged in a

13

manner that creates a false and defamatory impression about him and thus stigmatizes him and foreclosures him from other employment opportunities." *Id.* (internal quotations omitted); *Rayborn v. Bossier Par. Sch. Bd.*, 881 F.3d 409, 419 (5th Cir. 2018) (internal quotations omitted) ("[R]eputation alone is not a constitutionally protected interest."). To determine whether the circumstances surrounding a given termination meet this threshold, the Fifth Circuit relies on a seven-element "stigma-plus-infringement" test. *Bledsoe*, 449 F.3d at 653. A plaintiff must establish each of the following:

> (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge; (3) the charges were false; (4) he was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer denied the request.

*Id.* Defendants assert Cervantez has inadequately pled the fourth and fifth elements of the "stigma-plus-infringement" test because he failed to avail himself of the procedures offered him, Dkt. No. 53 at 20, and failed to adequately plead that the charges were made public, Dkt. No. 57 at 13. The Court need only focus on the fifth element.

With regard to the issue of whether the charges were made public, Cervantez claims that the allegedly stigmatizing "RS57B" designation—meaning that he separated while a disciplinary action was pending—was publicized in three ways: (1) internally at TDCJ as evidenced by its failure to rehire him and the reasons it gave; (2) his own open records request where he procured a copy of the PERS 327, which contained the "RS57B" designation; and (3) future law enforcement employers, such as the BOP could find this information through a background check or Cervantez himself would be required to disclose the information through the employment selection process. Dkt. No. 1 at 25.

14

With regard to internal TDCJ knowledge of his separation with a pending disciplinary action, and failure to rehire him on that basis, under the relevant law, this does not qualify as "public" disclosure sufficient to stigmatize Cervantez. A liberty interest is not implicated unless false charges have been officially or intentionally divulged to persons outside the governmental agency employing the claimant, or are likely to be so divulged. *See Campos v. Guillot*, 743 F.2d 1123, 1126 (5th Cir. 1984); *Wells v. Hico Independent School District*, 736 F.2d 243, 256 (5th Cir. 1984); *Willbanks v. Smith County, Tex.*, 661 F. Supp. 212, 217 (E.D. Tex. 1987). The TDCJ's reliance on its own internal Agency documents in declining to rehire Cervantez does not qualify as publication. The response to Cervantez's open records request is also insufficient to qualify as "publication." The Fifth Circuit has "expressly held that there is no liability when the agency has carefully kept the charges confidential and the plaintiff caused them to be made public." *Hausey v. City of McKinney*, 71 F. App'x 440, 440 (5th Cir. 2003) (internal quotations omitted). Cervantez's open records request of his own employment file is an insufficient basis to establish the publication element of a procedural due process liberty interest violation.

As to the possibility that in the future the BOP or other future law enforcement employers will request Cervantez's records and discover his unresolved disciplinary infraction, this is also insufficient to establish public disclosure. The presence of defamatory information in one's personnel file is not sufficient to establish a violation of one's liberty interests. *Bishop v. Wood*, 426 U.S. 341, 348 (1976). To be actionable, the reasons for the discharge must be made public. *Id.; Kelleher v. Flawn*, 761 F.2d 1079, 1087-88 (5th Cir. 1985) (holding the mere presence of defamatory information in a personnel file is not an infringement of the employee's liberty interest unless the government has made or is likely to make a disclosure of such information). The "personnel records

of state employees are not freely available, . . . both the employer and the government employee have the right to resist disclosure of such records when disclosure will invade the government employee's privacy." *Hughes v. City of Garland*, 204 F.3d 223, 228 (5th Cir. 2000); *Willbanks,* 661 F.Supp. at 217.  As to any allegation that Cervantez himself may have to divulge the fact that his file contained a "RS57B" designation code to future employers, this is also insufficient to qualify as publication. *See Wei-Ping Zeng v. Texas Tech Univ. Health Sci. Ctr. at El Paso*, 2020 WL 1074810, at *20 (W.D. Tex. Mar. 4, 2020) (fact that Plaintiff had to tell prospective employers the reason for his termination was misconduct is insufficient to establish the publication element of a liberty interest-based due process claim).  Cervantez has failed to adequately plead the public disclosure element of the "stigma-plus infringement" test sufficient to make out a liberty interest.

Thus, the facts alleged in Cervantez's complaint fail, as a matter of law, to demonstrate the existence of a liberty or property interest sufficient to make out a procedural due process claim and these claims—both the official and individual capacity claims—should be dismissed.

### 3. Substantive Due Process Claims

"Substantive due process bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Marco Outdoor Advert., Inc. v. Reg'l Transit Auth*., 489 F.3d 669, 672 n.3 (5th Cir. 2007) (citation omitted). Substantive due process bars government actions that are arbitrary, or conscience shocking, in a constitutional sense. *City of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998). To succeed on a substantive due process claim in the public employment context, Cervantez must show: (1) that he had a property interest or right in his employment, and (2) that the employer's termination of that interest was arbitrary or capricious. *See Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir.1993). As described above,

Cervantez has failed to adequately plead a basis for a property interest in his employment with TDCJ. Thus he cannot make out a substantive due process claim.  Additionally, where substantive and procedural due process claims rest on the same allegations, the substantive due process claim must either fail or be subsumed within the more specific procedural due process claim. *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005); *Cordova v. Louisiana State Univ. Agric. & Mech. Coll. Bd. of Supervisors*, 2020 WL 1695053, at *5 (W.D. La. Apr. 7, 2020).  The substantive due process claim thus also fails to state a claim.[2]

## IV. RECOMMENDATION

In accordance with the foregoing discussion, the Court **RECOMMENDS** that the District Court **GRANT** Defendants' Motion for Judgment on the Pleadings for Lack of Subject Matter Jurisdiction and Failure to State a Claim (Dkt. No. 53) and **DISMISS** for lack of subject matter jurisdiction Cervantez's due process claims seeking monetary relief against Defendants in their official capacity; **DISMISS WITH PREJUDICE** for failure to state a claim upon which relief may be granted Cervantez's official capacity due process claims seeking prospective injunctive relief and individual capacity due process claims seeking monetary relief; and **DISMISS WITHOUT PREJUDICE** all of Cervantez's claims under state law for lack of jurisdiction. **LASTLY**, the Court **ORDERS** this case **REMOVED** from the docket of the undersigned and **RETURNED** to the docket of the Honorable Robert Pitman.

---

[2]The Defendants also assert that they are entitled to dismissal of the federal claims brought against them in their individual capacity under the qualified immunity doctrine.  Because the Court has concluded that the individual claims should dismissed under Rule 12(b)(6), it does not reach the qualified immunity defense.  Similarly with regard to the claims under state law, because the Court lacks jurisdiction over those claims pursuant to the Eleventh Amendment, it does not reach Defendants' alternative argument that those claims are barred by the Texas Tort Claims Act and Texas' state sovereign immunity.

## V. WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).  A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 16th of July, 2020.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

18